1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE ANTONIA MACONEL-ARGUELLO,<br><br>                Petitioner,<br><br>        v.<br><br>CHRISTOPHER CHESTNUT, et al.,[1]<br><br>                Respondents. | Case No. 1:25-cv-01588-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND ORDER PETITIONER'S IMMEDIATE RELEASE |

        Petitioner, represented by counsel, is an immigration detainee proceeding with a petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the

undersigned recommends granting the petition for writ of habeas corpus and ordering

Petitioner's immediate release.

---

[1] Respondents argue that the "Court should dismiss all respondents other than the Warden of the California City ICE Processing Center because the only proper respondent to a habeas petition is the custodian having immediate custody of the petitioner." (ECF No. 10 at 1 n.1.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024). Although Doe held that "Padilla set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition," 109 F.4th at 1197, Doe did not necessarily preclude naming more than one respondent so long as the immediate custodian is named. Given that Petitioner has named her immediate custodian as a Respondent, the undersigned recommends declining to dismiss all the other named Respondents.

# I.

## BACKGROUND

Petitioner is a citizen of Nicaragua. On October 4, 2022, Petitioner entered the United States and was apprehended by Customs and Border Patrol that same day. (ECF No. 1-1 at 3; ECF No. 10-1 at 2.) Petitioner was processed for expedited removal. During processing, Petitioner claimed a fear of return. (ECF No. 10-1 at 2.) On October 7, 2022, Petitioner was issued an Interim Notice Authorizing Parole under section 212(d)(5)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A), after being found eligible for enrollment into the Alternative to Detention ("ATD") program. (ECF No. 1-1 at 3; ECF No. 1-2 at 4–5; ECF No. 10-1 at 2.)

Petitioner received a credible fear interview at the San Francisco Asylum Office on December 5, 2022. The Credible Fear Worksheet (Form I-870) reflects that the asylum officer found Petitioner credible and concluded that she had established a credible fear of persecution on account of political opinion. (ECF No. 1-1 at 4; ECF No. 1-2 at 11, 14.) On December 13, 2022, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging Petitioner with removability under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (ECF No. 10-1 at 2.)

On or about October 4, 2023, Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal. (ECF No. 1-1 at 4; ECF No. 1-2 at 7.) Petitioner subsequently obtained employment authorization as an asylum applicant. (ECF No. 1-1 at 5.) Petitioner alleges that for nearly three years, she complied with supervision through U.S. Immigration and Customs Enforcement's ("ICE") Intensive Supervision Appearance Program ("ISAP")/SmartLINK program. Petitioner "attended her scheduled check-ins and used the SmartLINK mobile application as directed. She never absconded, never missed an immigration court hearing, and was never charged with any crime." (ECF No. 1 at 2–3.)

On October 28, 2025, Petitioner appeared at an ISAP office in San Jose, California, for a routine scheduled check-in and was taken into custody without prior notice and without any opportunity to contest alleged "administrative violations" related to SmartLINK photo

1  submissions. Petitioner was later transferred to California City Corrections Center, where she

2  remains detained. (ECF No. 1 at 3.)

3      On November 18, 2025, Petitioner filed the instant petition for writ of habeas corpus,

4  challenging her re-detention as violative of procedural and substantive due process and the

5  Administrative Procedure Act. (ECF No. 1.) Respondents have filed an opposition, and

6  Petitioner filed a reply. (ECF Nos. 10, 11.)

7                                      **II.**

8                                 **DISCUSSION**

9      In her first claim for relief, Petitioner asserts that she "acquired a significant liberty

10  interest in remaining at liberty subject to reasonable conditions of supervision" because for

11  "nearly three years, Petitioner lived and worked in Seaside, California, complied with

12  ISAP/SmartLINK supervision, maintained valid employment authorization as an asylum

13  applicant, and pursued her defensive asylum case in immigration court without any criminal

14  history or allegations of absconding." (ECF No. 1 at 17.) Petitioner contends that her procedural

15  due process rights were violated because she "received no prior written notice of the alleged

16  violations, no warning that her liberty was at risk, and no opportunity to present evidence or to

17  explain that any delayed photo submissions were caused by technical failures of the SmartLINK

18  application rather than intentional noncompliance. She has not been provided with any prompt

19  custody or bond hearing before an Immigration Judge or other neutral decision-maker since her

20  re-detention." (ECF No. 1 at 18.)

21      Respondents argue that "Petitioner has 'only those rights regarding admission that

22  Congress has provided by statute.' That is, Petitioner is entitled only to the protections set forth

23  by statute and 'the Due Process Clause provides nothing more.'" (ECF No. 10 at 24 (quoting

24  DHS v. Thuraissigiam, 591 U.S. 103, 140 (2020)).) In support of this position, Respondents rely

25  on Landon v. Plasencia, 459 U.S. 21 (1982), Shaughnessy v. United States ex rel. Mezei, 345

26  U.S. 206 (1953), United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950), and

27  Thuraissigiam, 591 U.S. 103. These cases addressed due process rights *with respect to*

28  *admission*, as evidenced by the language from these cases quoted by Respondents. Here,

1   however, Petitioner is not raising claims regarding the admission process. See Padilla v. U.S.

2   Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("Defendants ask the

3   Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only

4   those due process rights afforded to them by statute, regardless of the nature of their status or the

5   relief they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the

6   Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to

7   challenges to admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued

8   May 21, 2025); J.E.H.G. v. Chesnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *10

9   n.10 (E.D. Cal. Dec. 9, 2025) (rejecting similar government argument); Carmen G.C. v. Robbins,

10  No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *3–4 (E.D. Cal. Dec. 8, 2025)

11  (rejecting similar government argument).

12      "We examine procedural due process questions in two steps: the first asks whether there

13  exists a liberty or property interest which has been interfered with by the State; the second

14  examines whether the procedures attendant upon that deprivation were constitutionally

15  sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations

16  omitted).

17      **A.  Liberty Interest**

18      "[T]he Due Process Clause applies to all 'persons' within the United States, including

19  aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v.

20  Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody,

21  detention, or other forms of physical restraint—lies at the heart of the liberty that Clause

22  protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed

23  whether due process requires a parolee be afforded some opportunity to be heard prior to

24  revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in

25  his continued liberty," the Supreme Court stated:

26              The liberty of a parolee enables him to do a wide range of things
                open to persons who have never been convicted of any crime. The
27              parolee has been released from prison based on an evaluation that
                he shows reasonable promise of being able to return to society and
28              function as a responsible, self-reliant person. Subject to the

4

> conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

"Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See Omer G. G. v. Kaiser, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025) ("Under the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released 'pending a final decision' in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was

granted a five-year work authorization permit during his year on parole status, petitioner

reasonably maintained a liberty interest in his release pending a final removal decision in his

immigration case."); Maklad v. Murray, No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376, at *8

(E.D. Cal. Aug. 8, 2025) (finding petitioner has a protected liberty interest after having been

released on parole for nearly three years).

### B. **Mathews** Test

Respondents contend that the "Supreme Court, however, has never used this balancing

test to divine the due-process requirements for immigration detention," citing Rodriguez Diaz v.

Garland, 53 F.4th at 1189, 1206(9th Cir. 2022); id. at 1214 (Bumatay, J., concurring). (ECF No.

10 at 20.) However, in Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8

U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due

Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the

government bears the burden of proof by clear and convincing evidence," the panel majority

"assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has

"regularly applied *Mathews* to due process challenges to removal proceedings," and finding

"*Mathews* remains a flexible test that can and must account for the heightened governmental

interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206.

Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96

S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there

was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See

Rocha Chavarria, 2025 WL 3533606, at *3 ("Many district courts in the Ninth Circuit have

found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty

interest in their continued release, entitling them to certain due process protections, the extent of

which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335

(1976)."); J.E.H.G., 2025 WL 3523108, at *10–11 (finding "liberty interest created by the fact

that the Petitioner in this case was released on recognizance" and "[t]hus, the Court must

evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to

determine whether the procedures (or lack thereof) that have been applied to Petitioner are

1  sufficient to protect the liberty interest at issue"). Based on the foregoing, the Court finds that the

2  Mathews test is appropriate in this instance.

3          In Mathews, the Supreme Court held that "identification of the specific dictates of due

4  process generally requires consideration of three distinct factors":

5                  First, the private interest that will be affected by the official action;
                   second, the risk of erroneous deprivation of such interest through
6                  the procedures used, and the probable value, if any, of additional or
                   substitute procedural safeguards; and finally, the Government's
7                  interest, including the function involved and the fiscal and
                   administrative burdens that the additional or substitute procedural
8                  requirements would entail.

9  Mathews, 424 U.S. at 334.

10         With respect to the first factor, the Court finds that the private interest at issue is

11  fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration

12  detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the

13  'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976,

14  993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

15         "Second, the risk of erroneous deprivation is high when, as here, parole is revoked

16  without written notice or reason." Rocha Chavarria, 2025 WL 3533606, at *4. "Civil

17  immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a

18  noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-

19  cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in

20  original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on parole necessarily required

21  a determination that she posed neither a flight risk nor a danger. Rocha Chavarria, 2025 WL

22  3533606, at *4 (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025

23  WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176

24  (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole

25  while their removal proceedings are pending. Release reflects a determination by the government

26  that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for

27  A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now

28  a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to

1  determine if petitioner's re-detention is justified, 'the probable value of additional procedural

2  safeguards, i.e., a bond hearing, is high.'" <u>Sharan S. v. Chestnut</u>, No. 1:25-cv-01427-KES-SKO

3  (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting <u>A.E. v. Andrews</u>, No. 1:25-

4  cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)).

5          With respect to the third and final factor, "although the government has a strong interest

6  in enforcing the immigration laws, the government's interest in detaining petitioner without a

7  hearing is 'low.'" <u>J.A.E.M.</u>, 2025 WL 3013377, at *7 (citing <u>Ortega v. Bonnar</u>, 415 F. Supp. 3d

8  963, 970 (N.D. Cal. 2019); <u>Doe</u>, 787 F. Supp. 3d at 1094). <u>See</u> <u>Henriquez v. Garland</u>, No. 5:22-

9  cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government

10 has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued

11 removal orders are promptly executed, the Government's interest in detaining Petitioner without

12 providing an individualized bond hearing is low."). Courts generally have found that the cost of

13 providing a custody hearing is relatively minimal, and there is nothing in the record before this

14 Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or

15 administratively burdensome. <u>See</u> <u>J.A.E.M.</u>, 2025 WL 3013377, at *7 ("In immigration court,

16 custody hearings are routine and impose a 'minimal' cost." (citing <u>Doe</u>, 787 F. Supp. 3d at

17 1094)).

18         On balance, the <u>Mathews</u> factors show that Petitioner is entitled to notice and a bond

19 hearing and "[t]hat hearing should have occurred before petitioner was re-detained." <u>Carmen</u>

20 <u>G.C. v. Robbins</u>, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec.

21 8, 2025).

22                    "'[T]he root requirement' of the Due Process Clause" is "'that an
                      individual be given an opportunity for a hearing *before* he is
23                    deprived of any significant protected interest.'" *Cleveland Bd. of
                      Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v.*
24                    *Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at
                      127 ("Applying [the *Mathews*] test, the Court usually has held that
25                    the Constitution requires some kind of a hearing *before* the State
                      deprives a person of liberty ...."). Courts typically require evidence
26                    of urgent concerns or an especially strong government interest to
                      justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL
27                    1983677, at *9; *United States v. James Daniel Good Real Prop.*,
                      510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to
28                    the general rule requiring predeprivation notice and hearing, but

                                                  8

1

2

3

> only in extraordinary situations where some valid governmental
> interest is at stake that justifies postponing the hearing until after
> the event[,]" such as "executive urgency." (internal quotations
> omitted)).

4 Carmen G.C., 2025 WL 3521304, at *7.

5      At such a pre-deprivation hearing, the government bears the burden of proving by clear

6 and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-

7 detention is warranted. See Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024) (confirming

8 that the government bears the "clear-and-convincing burden of proof" at an immigration bond

9 hearing ordered pursuant to the Due Process Clause); Carmen G.C., 2025 WL 3521304, at *7

10 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the

11 government must prove that she is a flight risk or danger to the community by clear and

12 convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108,

13 at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by

14 the government that the noncitizen is not a danger to the community or a flight risk. Since it is

15 the government that initiated re-detention, it follows that the government should be required to

16 bear the burden of providing a justification for the re-detention.").[2]

17      **C.  Appropriate Relief**

18      Courts in this district have taken differing approaches to the relief granted to petitioners

19 who have been released, subsequently re-detained, and denied bond hearings in violation of due

20 process. In some cases, the immediate release of the petitioner has been ordered. See, e.g.,

21 Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9,

22 2025) (ordering immediate release of petitioner who had been released from immigration

23 detention on parole, was arrested for theft but the case was resolved with community service and

24 did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen

25 G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated

26 reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate

27

28 ───────────
[2] In light of the Court's conclusion, the undersigned declines to address Petitioner's second and third claims for relief regarding substantive due process and the Administrative Procedure Act.

release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, there is nothing before this Court demonstrating that Petitioner violated her conditions of release. Respondents do not allege any violations nor do they contend that Petitioner is a flight risk or a danger to the community. Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

### III.

### RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on Petitioner's first claim for relief.
2. Respondents be directed to immediately release Petitioner from custody with the same conditions she was subject to immediately prior to her detention on October 28, 2025.
3. Respondents be enjoined and restrained from re-detaining Petitioner unless Respondents demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file

written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 15, 2026**            /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE